J-A02034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.J.D. | : | |
| | : | |
| Appellant | : | No. 823 WDA 2020 |

Appeal from the Order Entered July 27, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-09-008294-016

| L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.J.D. | : | |
| | : | |
| Appellant | : | No. 824 WDA 2020 |

Appeal from the Order Entered July 27, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-09-008294-016

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED: JUNE 15, 2021**

I respectfully dissent. Unlike my learned colleges, I believe that the trial court erred in denying Father's petition for special relief without a hearing, and in imposing counsel fees, again without a hearing, for his alleged obdurate and vexatious behavior in filing serial requests for relief. From my perspective, the decision to deny Father's third petition for special relief

without an evidentiary hearing not only denied Father the opportunity to prove his case, but it also failed to serve the best interests of his daughter, S.D. Thus, for the reasons explained, *infra*, and mindful that the best interests of the child is paramount in custody matters, I would vacate both orders and remand for an evidentiary hearing on the petition so that the trial court can confront the source of the problem and, if warranted, direct the family to obtain appropriate counseling.

This case epitomizes the necessity of evidentiary hearings in most custody disputes. Essentially, Father's current petition for special relief requested the court's assistance in effectuating his physical custody of his daughter, an obstinate twelve year-old child who refused to cooperate during the custody exchanges. He also asserted parental alienation and complained that Mother created an environment that effectively made it impossible for S.D. to cooperate.[1] While the trial court did not specifically address the

---

[1] Specifically, Father asserted that "Mother has no respect for Father and utterly despises Father and belittles Father in the presence of S.D., making it impossible for S.D. to go with Father because of a reasonable fear of retribution by Mother upon her return." Third Petition for Special Relief— Custody, 7/21/20, ¶20. Mother denied the allegation. **See** Plaintiff's Response to Defendant's Third Emergency Petition For Special Relief, 7/27/20, ¶20 ("Mother is unable to respond to Father's absurd beliefs. Mother does not belittle Father to S.D. and/or threaten retribution. Mother encourages child to go with Father.").

allegation of parental alienation, it rejected the claim implicitly by denying Father's request for relief.[2]

At the outset, I agree that Father failed to comply with the trial court's published COVID-19 procedural protocols for motions practice in requesting an evidentiary hearing. However, unlike the majority, I do not believe that the trial court's strict conformity with those procedures was warranted in this case. Indeed, the trial court's mechanical application of the procedural protocols was contrary the S.D.'s best interests. By the date that Father filed the instant petition for special relief, his third in three months, the trial court was familiar with the child's persistent, unexplained refusal to comply with the custody exchanges. Although this enduring issue was clearly affecting the child's best interests, the trial court neglected to schedule an evidentiary hearing *sua sponte* and address it. I simply cannot countenance the trial court's decision to acquiesce to the whims of a twelve-year-old child in contravention of the child custody order and reinforce that *status quo* without consideration of the child's best interests.

In addition to serving S.D.'s best interests, I believe that a hearing was warranted in this case because the trial court engaged in fact-finding. My

---

[2] Likewise, the trial court denied Father's two prior entreaties by concluding that Mother satisfied her obligations as the custodial parent simply by presenting the child at the scheduled transfer. Unlike the trial court, I do not equate the finding that Mother did not actively violate the custody order with the absence of parental alienation.

learned colleagues accurately stated the appropriate legal principles regarding the trial court's discretion to deny a petition for relief because it lacks specificity or fails to state a claim on which relief may be granted. Thus, to the extent that Father's petition for special relief failed to articulate a basis for relief, he was not entitled to a hearing. However, notwithstanding the trial court's indication that it found Father's petition insufficient based upon undisputed facts, that is not what occurred in this case. In actuality, the trial court reviewed Father's petitions in light of Mother's responses and her unauthenticated exhibits[3], and, without deliberating over any properly admitted evidence, it made several factual determinations in favor of Mother and elevated her averments over Father's. This reality is illustrated by the trial court's reliance upon the Mother's exhibits as a basis to deny Father's petition and impose sanctions. **See** Trial Court Opinion, 8/31/20, at 22. Stated plainly, if Father's petition was deficient, the pleading would have failed for that reason alone, and the trial court would not have needed to invoke Mother's various exhibits to justify its decision.

In limiting its review to the averments contained in the competing pleadings, including Mother's new matter and attached exhibits, the court denied Father a meaningful opportunity to present his case or counter

---

[3] Mother's exhibits included select messages posted on the Our Family Wizard website, various correspondence between the parties' respective attorneys, and the police report that I discuss in the body of this dissent.

Mother's assertion that he mischaracterized facts, an assertion that the trial court endorsed in its opinion. Father was not able to object to the authentication of Mother's so-called evidence or assert that it was barred by the rule against hearsay. Furthermore, as Father accurately observes, without a hearing "[he] could not call witnesses, nor introduce evidence on his behalf. [He] could not effectively respond to [Mother's] points, nor cross-examine [Mother's] witnesses, including S.D.[, who, consistent with Mother's assertions, the trial court deemed to be the actual impediment]." Father's brief at 4 (emphasis in original). Accordingly, because the trial court resolved disputed facts in rendering its decision, I believe that Father was entitled to an evidentiary proceeding to prove his case.

Finally, even if it were appropriate for the trial court to make factual findings in the absence of an evidentiary hearing in this instance, its findings nonetheless required record support. For the following reasons, I conclude that the certified record does not support the trial court's findings that Father was dishonest with that tribunal, misstated facts, and filed serial petitions in bad faith.

As quoted by the majority, our standard of review requires that we determine, *inter alia*, whether the trial court "reache[d] a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." Majority Memorandum at 14 (quoting **Thompson v. Thompson**, 187 A.3d 259, 263 (Pa.Super. 2018)). Instantly, due to the trial court's

handling of this custody dispute, there is **no** evidentiary record for our review that relates to the petition that forms the genesis of this appeal. What does exist, however, is a compilation of competing pleadings, some of which were not verified pursuant to Pa.R.C.P. 206.3, that contain various allegations, counter allegations, and exhibits composed of unauthenticated documents that are rife with hearsay. It appears that the trial court treated the missives outlined in Mother's exhibits as the full extent of the relevant communications between the parties. In my view, the pleadings and exhibits afforded insufficient ground for the trial court to determine how the prevailing situation that Father challenged in his petition for relief implicates S.D.'s best interests.

The following recitation of facts demonstrates my point. While the trial court dedicated approximately six pages of its opinion to the procedural history and the majority memorandum reproduced several paragraphs verbatim, the history gleaned from the pleadings can be succinctly summarized as follows. Pursuant to a court order, Mother exercised primary physical custody of S.D. and Father exercised periods of partial physical custody. During the onset of the COVID-19 pandemic, Father voluntarily postponed his custodial rights for four weeks. However, concerned that the hiatus was harming his relationship with S.D., Father sought to reinitiate the custodial period on Wednesday, May 20, 2020. He was unable to exercise his custodial right that night because Mother advised him that, on week nights, S.D. had virtual soccer practice, which apparently took precedence. The

custodial periods never resumed. When Father attempted to exercise custody, S.D. refused to cooperate. On several occasions, including the periods scheduled on the said problematic weeknights, Father did not attempt to obtain custody.

In explaining its reason for denying Father's ensuing petitions for special relief, the trial court made several factual findings in Mother's favor despite the lack of an evidentiary record. Those determinations included finding that Father lied to the court about Mother withholding custody and that Father "mischaracterized the encounter with the Upper St. Clair Police Department[.]" *See* Trial Court Opinion, 8/31/20, at 22. Indeed, based entirely on the pleadings and unauthenticated documents, the court made the ultimate determination that Father's petitions "contained baseless allegations or outright dishonesty." *Id*. at 19.

My review of the record does not support the court's finding that Father's characterization of Mother's encounter with the police was inaccurate or dishonest. Mother concedes that she did, in fact, speak with police, but points out that the content of that communication was not recorded in the police report that she attached to her response as an exhibit. In its role as fact-finder, the trial court reasoned that the lack of a reference to Mother in the police report established that Father lied in stating that Mother refused to complete the exchange despite her conversation with police. *See* Trial Court Opinion, 8/31/20, at 20 ("[A]s Mother pointed out in her Response, the police

report from the Upper St. Clair Police Department made no mention of having spoken with Mother, but rather that the police officers had spoken with S.D. . . .").  The certified record simply does not support this conclusion.  If anything, there are outstanding questions of fact regarding both the nature of Mother's conversation with the police officer and the officer's reasons for omitting it from the report.  These are two more questions that an evidentiary hearing would have resolved had the court not neglected this issue.[4]

In sum, the crux of this case, as well as Father's two preceding petitions for special relief, is that twelve-year-old S.D. refused to cooperate with Father's attempt to exercise his custodial rights.  Father's petition for special relief alleged the refusal is a consequence of parental alienation, an assertion that Mother denied.  Without any evidentiary record, the trial court ruled in Mother's favor.  Vitally, however, the court failed to discern the cause of S.D.'s apprehension.  It very well may be the result of parental alienation or S.D. might have a legitimate reason to avoid Father.  Rather than confront this

_____

[4] The narrative portion of the police report provides, in total,

> [Father] reporting for the record that he came to pick up his 12y/o daughter, [S.D.] as per the court order and she refused to go with him.  I advised [Father] that we can't make her go with him and he understood our position.  I advised him to contact his attorney. [S.D.] did come out and advise that she wasn't going with her dad.

Plaintiff's Response to Defendant's Second Emergency Petition for Special Relief-Custody, Exhibit B at 2.

essential issue and determine how it is impacting the child's best interest, the trial court repeatedly yielded to the child's caprice.

An evidentiary hearing, whether in-person or by video or telephone conference, wherein the parties introduced evidence in accordance with the Pennsylvania Rules of Evidence, would have settled the factual disputes, resolved the integral issue concerning S.D.'s motivation, and permitted the court to fashion an order that both served S.D.'s interests and addressed the dispute between Mother and Father. Unfortunately, that did not occur and one year later, the family remains mired in the identical situation that existed during May 2020. For all of these reasons, I believe that denying Father's petition for special relief without an evidentiary hearing not only denied Father the opportunity to prove his case, but it also failed to serve S.D.'s best interests. *See C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018) ("The paramount concern in child custody cases is the best interests of the child."); Wilder, Pa. Family Law Prac. and Proc. (5th ed.), § 28-5 (footnote omitted) ("Custody determinations are so important that the trial court is expected to play an active role in creating a thorough and complete record.")

Accordingly, I respectfully dissent.